## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

BUENA VIBRA GROUP, LLC,

Plaintiff,

v.

EMMANUEL GAZMEY SANTIAGO; REAL
HASTA LA MUERTE, LLC; LEGENDARY
MUSIC GROUP CORP.,

Defendants.

CIVIL NO. 23-1414 (PAD-HRV)

## ORDER ON PLAINTIFF'S "MOTION TO COMPEL DISCOVERY"
## FILED AT DOCKET NO. 169

This is an action brought by Plaintiff Buena Vibra Group, Inc. ("Buena Vibra"), a marketing and advertising agency in Puerto Rico, against Emmanuel Gazmey-Santiago, commonly known as "Anuel" or "Anuel AA," and his companies, Real Hasta La Muerte ("RHLM") and Legendary Music Group Corp. ("Legendary Music"). Buena Vibra seeks an order compelling co-defendants Anuel and RHLM to produce several documents to resolve months-long discovery disputes. (Docket No. 169). Anuel and RHLM oppose Plaintiff's motion. (Docket No. 175). Plaintiff replied, and Defendants sur-replied. (Docket Nos. 181, 187).

This case has been referred to me to preside over all non-dispositive pretrial proceedings. (Docket No. 54). For the reasons set forth below, Buena Vibra's motion to compel at Docket No. 169 is GRANTED.

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

I briefly recount the background of the instant case. Buena Vibra filed this action on August 21, 2023. (Docket No. 1). But the events that led to the lawsuit occurred in late 2021 when Buena Vibra, Anuel, and RHLM partnered to design a promotional campaign for Anuel's upcoming album. All services were to be paid for by Anuel and RHLM. As part of the marketing plan, Anuel and RHLM entered into an agreement with the Ultimate Fighting Championship, commonly known as "UFC." Anuel and RHLM agreed to pay $125,000 to UFC. The complaint further alleges that Anuel and RHLM asked Buena Vibra to pay said amount under the promise that the money would be reimbursed. (Docket Nos. 1, 106 ¶ 14). After said first agreement, Anuel and RHLM entered into several other agreements whereby Buena Vibra also advanced payment pursuant to the alleged promise of reimbursement by Anuel and RHLM.

In May 2025, with prior leave from the Court, Plaintiff filed an amended complaint (Docket No. 106), bringing forth Legendary Music as defendant. Buena Vibra alleges that Legendary Music was created by José Gazmey (Anuel's father) to acquire RHLM's rights, assets, debts, and obligations – including a distribution agreement – so as to hinder, delay, and/or defraud RHLM's creditors, including Plaintiff.

Prior to filing the amended complaint, Plaintiff served requests for production of documents on Anuel and RHLM seeking audits' drafts and related material, including all exhibits and bank statements referenced in a certain audit that prompted RHLM to be liquidated as well as all agreements executed between co-defendants and several third parties, including Foot Locker, Foot Action, Nike, Livemba Music, Ana María Jiménez, and European promoters. (Docket No. 169 at 1 and 2). Additionally, Plaintiff sought all

agreements executed by Frabián Carrión on behalf of Anuel and/or RHLM. (Id.). Plaintiff contends that on July 23, 2025, counsel for Anuel and RHLM represented that all materials related to the audit, workpapers, and exhibits would be produced by no later than July 30, 2025. (*Id.*). That date came and went, but the materials were not produced, prompting Plaintiff to renew its demand on October 24, 2025. (Docket No. 169-7). Plaintiff maintains that since then, Defendants have only produced a single audit bearing a revision date of November 1, 2023. Between February 12, 2026, and February 23, 2026, Buena Vibra asserts that it attempted to obtain compliance with the pending discovery requests without court intervention but was unsuccessful. (Docket Nos. 169-8, 169-9).

Anuel and RHLM oppose Plaintiff's motion to compel arguing that the requests are speculative, do not exist, are not within their possession, custody, or control, and are just an attempt by Buena Vibra to "reframe targeted disagreements over scope and relevance." (Docket No. 175 at 2). Further, these co-defendants have objected to several of the production requests at issue, claiming that they are not relevant to any party's claims or defenses, proportional to the needs or the case, and that they amount to a fishing expedition or are overbroad. (Id. at 3).

## II.    APPLICABLE LAW AND DISCUSSION

### A.    Legal Standards

Federal Rule of Civil Procedure 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" and that information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Within the scope of Rule 26, a party may conduct discovery by serving another party with a request for documents pursuant

to Fed. R. Civ. P. 34 ("Rule 34"). The responding party must produce documents that are within the party's "possession, custody or control." Fed. R. Civ. P. 34(a)(1). Once properly served, the response to a request for production of documents is generally either (1) actual production of the documents, or (2) an objection stating with specificity the grounds for objecting to the request. Fed. R. Civ. P. 34(b)(2)(B); *see also Vazquez-Fernandez v. Cambridge College, Inc.*, 269 F.R.D. 150, 154 (D.P.R. 2010).

If "a party fails to produce documents . . . as requested under Rule 34," the affected party may move for an order compelling disclosure. Fed. R. Civ. P. 37(a)(3)(B)(iv). The party filing a motion to compel discovery has the initial burden of showing that the requested discovery is relevant. *Maggi v. Grafton Cnty. Dep't of Corr.*, No. 18-cv-59-LM, 2021 WL 12147799, 2021 U.S. Dist. LEXIS 269964 at *5 (D.N.H., Nov. 9, 2021). This initial burden is not onerous. *Phillips Med. Sys. P.R., Inc. v. Alpha Biomedical & Diagnostic Corp.*, Civil No. 19-1488 (BJM), 2021 WL 150411, 2021 U.S. Dist. LEXIS 8739 at *12 (D.P.R., Jan. 15, 2021). "Once this burden is met, the party resisting production bears the burden to show that the discovery is improper." *Id.* (citing *Autoridad de Carreteras y Transportacion v. Tanscore Atl., Inc.*, 319 F.R.D. 422, 427 (D.P.R. 2016)). "[A] trial court has broad discretion in ruling on pre-trial management matters[.]" *Bonner v. Triple-S Management Corp.*, 68 F.4th 677, 684 (1st Cir. 2023).

**B.    Analysis**

With the above-outlined legal framework in mind, and after carefully considering the specific arguments of the parties, I now rule on Plaintiff's motion to compel as follows, using as a guide the list of documents that have allegedly not been produced. (*See* Docket No. 169 at 4-5).

***1.*** ***Executed Contracts:***

a. <u>All executed/signed agreements (including all signature pages and fully executed PDFs) relating to Foot Locker, Foot Action, Nike-branded collaborations or campaigns, whether directly or through intermediaries</u>: **Granted.** RHLM and Anuel assert, as an affirmative defense, that Frabián Carrión lacked the authority to enter into negotiations and sign contracts and/or agreements on behalf of RHLM and Anuel. The contracts are relevant insofar as they will demonstrate whether Carrión, in fact, possessed that authority -- whether through his own signature or through third parties, i.e. agents. (*See* Docket Nos. 169-6 at 2, lines 22-25; 181-2). RHLM and Anuel must make reasonable efforts to obtain documents that are in their possession, control, or custody. *P.R. Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriqueña, Inc.*, 318 F.R.D. 224, 230 (D.P.R. 2016).

b. <u>All fully executed Foot Locker agreements, which according to a recent production of documents, appear to have been signed on a yearly basis</u>: **Granted.** Again, RHLM and Anuel assert, as an affirmative defense, that Frabián Carrión lacked the authority to enter into negotiations and sign contracts and/or agreements on behalf of RHLM and Anuel. The contracts are relevant insofar as they will demonstrate whether Carrión, in fact, possessed that authority -- whether through his own signature or through third parties, i.e. agents. (*See* Docket Nos. 169-6 at 2, lines 22-25; 181-2). These co-defendants must make reasonable efforts to

obtain documents that are in their possession, control, or custody. *P.R. Med. Emergency Grp., Inc.*, 318 F.R.D. at 230.

c.   <u>All executed versions of the Livemba Music agreement</u>: **Granted.** Defendants assert, as an affirmative defense, that Frabián Carrión lacked the authority to enter into negotiations and sign contracts and/or agreements on behalf of RHLM and Anuel. The contracts are relevant insofar as they will demonstrate whether Carrión, in fact, possessed that authority --- whether through his own signature or through third parties, i.e. agents. (*See* Docket Nos. 169-6 at 2, lines 22-25; 181-2). Reasonable efforts shall be made to obtain documents that are in their possession, control, or custody. *P.R. Med. Emergency Grp., Inc.*, 318 F.R.D. at 230.

d.   <u>Agreements with Ana María Jiménez (Mad Music)</u>: **Granted**. RHLM and Anuel assert, as an affirmative defense, that Frabián Carrión lacked the authority to enter into negotiations and sign contracts and/or agreements on behalf of RHLM and Anuel. The contracts are relevant insofar as they will demonstrate whether Carrión, in fact, possessed that authority --- whether through his own signature or through third parties, i.e. agents. (*See* Docket Nos. 169-6 at 2, lines 22-25; 181-2). RHLM shall make reasonable efforts to obtain documents that are in their possession, control, or custody. *P.R. Med. Emergency Grp., Inc.*, 318 F.R.D. at 230.

e. <u>Any executed agreements involving the European promoters and/or related entities identified in discovery and prior correspondence, as well as all signature pages and execution communications</u>: **Granted.** Defendants assert, as an affirmative defense, that Frabián Carrión lacked the authority to enter into negotiations and sign contracts and/or agreements on behalf of RHLM and Anuel. The contracts are relevant insofar as they will demonstrate whether Carrión, in fact, possessed that authority --- whether through his own signature or through third parties, i.e. agents. (*See* Docket Nos. 169-6 at 2, lines 22-25; 181-2). Defendants must make reasonable efforts to obtain documents that are in their possession, control, or custody. *P.R. Med. Emergency Grp., Inc.*, 318 F.R.D. at 230.

f. <u>All contracts executed by Frabián Carrión on behalf of RHLM and/or Emmanuel Gazmey</u>: **Granted.** As stated above, defendants assert, as an affirmative defense, that Frabián Carrión lacked the authority to enter into negotiations and sign contracts and/or agreements on behalf of RHLM and Anuel. The contracts are relevant insofar as they will demonstrate whether Carrión, in fact, possessed that authority --- whether through his own signature or through third parties, i.e. agents. (*See* Docket Nos. 169-6 at 2, lines 22-25; 181-2). Defendants must make reasonable efforts to obtain documents that are in their possession, control, or custody. *P.R. Med. Emergency Grp., Inc.*, 318 F.R.D. at 230.

**2.    *Audits:***

 a. <u>All drafts, versions, interim reports, and revisions of any audit(s) relating to RHLM/Anuel and/or Frabián Carrión (including the audit produced with a revision date of Nov. 1, 2023, and any earlier or later versions)</u>: **Granted.** The information and/or documentation is relevant because it provides an overview of the economic situation of RHLM at the time of its dissolution and the creation of Legendary Music. During his deposition, José Gazmey testified that RHLM had been liquidated to "stop all the problems that were being had to be able to finalize our audit and complete it so that we would have a full accounting of what exactly happened and all the problems that happened. And that is why a new entity was established[.]" (Docket No. 169-4 at 4). Federal courts have recognized that when a party's financial condition is at issue, it may be required to disclose relevant financial information. *Richard Cora v. AMGEN Manufacturing Ltd.*, 2026 WL 836835, at *9 (D.P.R. Mar. 26, 2026). "Financial information is directly relevant to assessing the alleged economic losses, potential interim earnings, and mitigation efforts." *Id.* Disclosure is ordered.

 b. <u>All audit workpapers and source materials, including spreadsheets, ledgers, bank-download files, reconciliations, schedules, and any native files sufficient to show how figures were calculated</u>: **Granted**. The information and/or documentation is relevant because it provides an overview of the economic situation of RHLM at the time of its

dissolution and the creation of Legendary Music. During his deposition, José Gazmey testified that RHLM had been liquidated to "stop all the problems that were being had to be able to finalize our audit and complete it so that we would have a full accounting of what exactly happened and all the problems that happened. And that is why a new entity was established[.]" (Docket No. 169-4 at 4). Federal courts have recognized that when a party's financial condition is at issue, it may be required to disclose relevant financial information. *Richard Cora v. AMGEN Manufacturing Ltd.*, 2026 WL 836835, at *9 (D.P.R. Mar. 26, 2026). "Financial information is directly relevant to assessing the alleged economic losses, potential interim earnings, and mitigation efforts." *Id.* Disclosure is ordered.

c.  All communications with any auditor(s)/consultant(s) involved in the audit process, including communications with the private expert referenced in testimony (including Ronnie Samson/Beyond) and any court-appointed experts: **Granted**. Defendants are to produce a list of names of the auditor(s) and/or consultant(s) who took part in the auditing process and requested communications, if any.

d.  Any additional audit referenced in testimony, including the "parallel" audit ordered by the Florida court (and all drafts/versions/materials related to that audit): **Granted.** Defendants must make reasonable efforts to obtain documents that are in their possession, control, or custody. *P.R. Med. Emergency Grp., Inc.*, 318 F.R.D. at 230.

e.  All exhibits to the audit reports, including but not limited to all bank statements and financial account records referenced in the audit materials, including: (a) RHLM bank statements (including RHLM Chase statements cited, relied upon and/or referenced in the audit); and (b) Legendary Music Group bank statements and any other account statements cited, relied upon and/or referenced in the audit: **Granted.** The information and/or documentation is relevant because it provides an overview of the economic situation of RHLM at the time of its dissolution and the creation of Legendary Music. In his deposition, José Gazmey testified that RHLM had been liquidated to "stop all the problems that were being had to be able to finalize our audit and complete it so that we would have a full accounting of what exactly happened and all the problems that happened. And that is why a new entity was established[.]" (Docket No. 169-4 at 4). Federal courts have recognized that when a party's financial condition is at issue, it may be required to disclose relevant financial information. *Richard Cora v. AMGEN Manufacturing Ltd.*, 2026 WL 836835, at *9 (D.P.R. Mar. 26, 2026). "Financial information is directly relevant to assessing the alleged economic losses, potential interim earnings, and mitigation efforts." *Id.* The requested records, i.e., bank statements, are "ordinarily maintained by financial institutions and are readily obtainable." *Id.* Lastly, the request is not overbroad because it targets only the records relied upon or referenced in the audits.

10

To the extent that RHLM and Anuel maintain that they have already provided all the documentation responsive to a particular request, that a document does not exist, or that the relevant document is not in their possession, custody, or control, they must so certify under oath in response to each of the requests. *See Colon v. Blades*, 268 F.R.D. 129, 133 (D.P.R. 2010). However, the Court warns that legal ownership or actual physical possession of a document is not required to deem a document within the possession, custody, or control of a party; "documents are considered to be under a party's 'control' when that party has the right, authority or ability to obtain those documents upon demand." *Vazquez-Fernandez v. Cambridge College, Inc.*, 269 F.R.D. at 164 n. 10 (quoting *Green v. Fulton*, 157 F.R.D. 136, 142 (D. Me. 1994)). As such, this is not meant to serve as an escape hatch; but the court must also be mindful that a party cannot be compelled to produce a document that does not exist.

Additionally, if the producing party believes that the disclosure of certain information warrants protection, then the proper vehicle is a motion for protective order or a confidentiality agreement, not refusing to answer or resisting disclosure. Fed. R. Civ. P. 26(c)(1). Thus, if RHLM and/or Anuel have privacy concerns in disclosing any of the materials that this Order mandates, such concerns can be adequately addressed through the confidentiality agreement that is already in place (Docket No. 88) or a protective order. See *Richard Cora*, 2026 WL 836835, at *12.

### III.    CONCLUSION

In view of the foregoing, Plaintiff's motion to compel at Docket No. 169 is GRANTED.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 29th day of April, 2026.

S/Héctor L. Ramos-Vega
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE
